UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BOBBY FARID HADID,                                    :
                                                      :        **<u>DECISION & ORDER</u>**
              Plaintiff,          :        15-CV-19 (WFK) (RER)
                                                      :
     -v.-                             :
                                                      :
THE CITY OF NEW YORK, et al.,                         :
                                                      :
             Defendants.         :
------------------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

      Plaintiff Bobby Farid Hadid ("Plaintiff") brought this action against The City of New
York, Raymond W. Kelly, David Cohen, Thomas Galati, William Bratton, John Miller, Charles
Campisi, Christopher Broschart, Charles Hynes, Melissa Carvajal, and Elizabeth Moehle
(collectively "Defendants") alleging violations of his rights pursuant to, *inter alia*, 42 U.S.C.
§1983 and §1985 for abuse of process, false arrest, malicious prosecution, and denial of his right
to a fair trial. Defendants now move to dismiss Plaintiff's complaint in its entirety pursuant to
Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state
a claim. For the reasons that follow, Defendants' motion to dismiss is GRANTED IN PART and
DENIED IN PART.

## BACKGROUND

      Plaintiff was born in Algeria in 1967, immigrated to the United States in 1994, and

became a naturalized citizen of the United States thereafter. Dkt. 1 ("Complaint") at ¶ 25. In

response to the terrorist attacks of September 11, 2011, Plaintiff joined the New York Police

Department ("NYPD") in July 2002 and became a police officer. *Id.* at ¶ 26. Plaintiff is fluent

in French and speaks multiple dialects of Arabic. *Id.* at ¶ 27. He was designated as a "Master

Linguist" by the NYPD. *Id.* While at the NYPD, Plaintiff received many assignments including

patrol duties at the 84th and 94th Precincts, acting as an undercover agent for the Citywide Vice

Squad, and as a Detective assigned to the FBI-led Joint Terrorism Task Force ("JTTF") in New

York City. *Id.* at ¶ 28.

On December 21, 2007, Plaintiff was promoted to Sergeant by the NYPD, and was reassigned from the JTTF to uniformed patrol duties in the 115th Precinct in Queens, New York. *Id.* at ¶ 33. Shortly thereafter, Defendant David Cohen ("Cohen"), as the head of the Intelligence Division of the NYPD, informed Plaintiff that because of his exemplary work with the JTTF and his language fluency in Arabic, Plaintiff would be immediately assigned to the Intelligence Division. *Id.* at ¶ 34.

From about January 2008 to May 2009, Plaintiff worked at the Intelligence Division and supervised the Citywide Debriefing Unit within that division, which was comprised of a team of NYPD investigators that conducted interrogations of persons identified as Muslims or of Middle Eastern origin who had been arrested for minor offenses. *Id.* at ¶ 35. According to Plaintiff, Plaintiff and members of the Citywide Debriefing Unit interrogated arrestees in NYPD holding facilities based on a daily list created by the NYPD of arrestees who were likely Muslim and/or of Middle Eastern origin. *Id.* at ¶ 36. The interrogators questioned the arrestees regarding their specific religious affiliation within the Islamic faith, the nature and frequency of their religious practice, what mosques they attended, and whether they participated in pilgrimages to Mecca. *Id.* at ¶¶ 2, 37. These interrogations were reported in official police reports known as DD-5s. *Id.* at ¶¶ 2, 40.

In early 2009, at a meeting of Intelligence Division officials led by Captain Donald T. Powers, Plaintiff openly expressed his concerns about the propriety of the NYPD interrogating Muslim arrestees and in particular the recording of information because the interrogations yielded no pertinent information that ought to be maintained in an intelligence database. *Id.* at ¶ 39.

Plaintiff claims that after he openly voiced his concerns over the profiled interrogations, Defendants Cohen and Thomas Galati ("Galati"), Chief of the Intelligence Division, as well as other officials of the Intelligence Division initiated a series of retaliatory and punitive disciplinary actions against Plaintiff in an effort to suppress and discredit any public disclosure Plaintiff would make concerning the interrogations. *Id.* at ¶¶ 3, 16, 40. According to Plaintiff, these retaliatory and punitive measures culminated in the NYPD and Kings County District Attorney officials' joint effort to prosecute Plaintiff on charges of perjury stemming from translation work he did in France in 2007 for NYPD detectives investigating a homicide in Brooklyn, New York. *Id.* at ¶¶ 3, 41-51.

On October 15, 2010, Plaintiff was called by Defendant Melissa Carvajal ("Carvajal"), Assistant District Attorney of Kings County, New York, to testify at a hearing in Kings County Supreme Court regarding his 2007 translation work in France. *Id.* at ¶ 46. On October, 27, 2010, Plaintiff was again called by Defendant Carvajal to testify about the same. *Id.* at ¶ 47.

According to Plaintiff, on April 12, 2011, at the "direct urging, encouragement, and importuning" by Defendants Cohen, Galati, Charles Campisi ("Campisi"), Commanding Officer of Internal Affairs Bureau of the NYPD, and Charles Hynes ("Hynes"), District Attorney for Kings County, New York, Plaintiff was indicted for two felony counts of Perjury in the Second Degree and two felony counts of Perjury in the First Degree. *Id.* at ¶ 50. Plaintiff claims, because of the indictment, he was arrested by Internal Affairs Bureau officers "who were acting at the direction and orders of [Defendants] Cohen, Campisi[,] and Hynes[.]" *Id.* at ¶ 51.

On October 18, 2012, the bench trial against Plaintiff commenced. *Id.* at ¶ 52. According to Plaintiff, during the course of the trial, Defendants Elizabeth Moehle, Assistant District Attorney for Kings County, New York, and Defendant Carvajal offered evidence

regarding Plaintiff's involvement in the 2007 translations in France that they knew or should have known was falsified and not true. *Id.* at ¶ 53-59. On October 25, 2012, the trial judge found Plaintiff guilty of Perjury in the First Degree. *Id.* at ¶ 60. On December 6, 2012, the trial judge sentenced Plaintiff to five years' probation and imposed required fines and penalties in the amount of $375.00. *Id.*

On November 1, 2012, Plaintiff was given formal notice of his termination from the NYPD based on the above-mentioned felony conviction. *Id.* at ¶ 61. Plaintiff was also denied unemployment benefits as a result of his felony conviction. *Id.* After Plaintiff's termination, he publicly revealed the existence of the Intelligence Division's Citywide Debriefing Unit and the practice of interrogating detained Muslims or individuals of apparent Middle Eastern origin to gain information about their religious affiliations and practices. *Id.* at ¶ 64.

On October 14, 2014, Plaintiff's perjury conviction was reversed and the indictment was dismissed as a matter of law by a unanimous panel of the New York State Appellate Division, Second Department. *Id.* at ¶ 67. Thereafter, on October 21, 2014, Plaintiff sent a letter to Defendant William Bratton ("Bratton"), Police Commissioner of the City of New York, seeking to be restored to duty. *Id.* at ¶ 69. After receiving no response, Plaintiff submitted a second letter to Defendant Bratton on November 25, 2014. *Id.* at ¶¶ 70-71. According to Plaintiff, Defendant Bratton's refusal to consider Plaintiff's reinstatement was taken in further retaliation against Plaintiff for his public expression of concern about the interrogation practices of the Intelligence Division. *Id.* at ¶ 73.

Based on the foregoing, Plaintiff filed the instant Complaint on January 5, 2015 alleging Defendants violated several federal and state laws by using their "power, position[,] and influence to prosecute a baseless claim of perjury against [Plaintiff]." *Id.* at ¶ 4. Plaintiff asserts

the following causes of action against Defendants: (1) Violation of First Amendment Rights under 42 U.S.C. § 1983, (2) Malicious and Fraudulent Prosecution under 42 U.S.C. § 1983, (3) Malicious Abuse of Process under 42 U.S.C. § 1983, (4) Conspiracy to Violate Plaintiff's Civil Rights under 42 U.S.C. § 1983, (5) Conspiracy to Violate Plaintiff's Civil Rights under 42 U.S.C. § 1985(3), (6) Violation of Plaintiff's Right to a Fair Trial under 42 U.S.C. § 1983, (7) Violation of Substantive and Procedural Due Process under 42 U.S.C. § 1983, (8) Municipal Liability under 42 U.S.C. § 1983, (9) Malicious Prosecution under New York State law, (10) Malicious Abuse of Process under New York State law, and (11) False Arrest under New York State law. *See* Complaint at ¶¶ 76-130.

On October 2, 2015, Defendants filed their fully briefed motion to dismiss this action in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Dkt. 39 ("Motion to Dismiss"). Plaintiff submitted an opposition arguing "Defendants' arguments fail either because they are based on false inferences, invalid arguments about factual matters[,] or incorrect statements of the applicable law." Dkt. 40 ("Opposition") at 6. The Court will first address the legal principles surrounding the instant motion to dismiss before applying them to the issues at hand.

## ANALYSIS[1]

### I. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A

---

[1] Throughout Plaintiff's Opposition, Plaintiff has reserved the right to amend the Complaint to allege additional facts with respect to most, if not all, of Plaintiff's claims. *See, e.g.*, Opposition at 14-15, n. 21. However, Plaintiff admits he only had until August 15, 2015 to make any such amendment as of right. *Id.* Plaintiff has failed to do so. Therefore, for purposes of this motion to dismiss, the initial Complaint remains operative.

sufficiently pled complaint "must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). If a complaint merely offers labels and conclusions, a formulaic recitation of the elements, or "naked assertions devoid of further factual enhancement," it will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)) (internal quotation marks and alteration omitted). At this stage, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff, the non-movant. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). However, the Court need not credit "legal conclusions" in a claim or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 72 (citing *Iqbal*, 556 U.S. at 678) (internal quotation marks and alteration omitted). Moreover, the Court is "not bound to accept as true legal conclusion couched as factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555) (internal quotation marks omitted). Legal conclusions must be supported by factual allegations. *Id.*; *Pension Benefit Guar. Corp.*, 712 F.3d at 717-18.

With respect to Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "Once challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. *Augienello v. F.D.I.C.*, 310 F. Supp. 2d 582, 587-88 (S.D.N.Y. 2004) (Sweet, J,) (internal citations omitted).

–6–

"On a motion to dismiss for lack of subject matter jurisdiction, the court may resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings" such as affidavits or other evidence. *Id.* at 588 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). "[C]ourts must accept as true all material factual allegations in the complaint" and "refrain from drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, No. 08-CV-1686, 2009 WL 1813230, at *1 (E.D.N.Y. June 25, 2009) (Garaufis, J.) (internal quotation marks and citations omitted). With these principles in mind, the Court turns to the analysis of the motion to dismiss.

## II.  Discussion

### A.  Plaintiff's Abuse of Process and False Arrest Claims are Time Barred

Plaintiff brings a malicious abuse of process claim under 42 U.S.C. § 1983, a state law claim for malicious abuse of process, and a state law claim for false arrest. See Complaint at ¶¶ 92-94, 125-130. Defendants move to dismiss these claims as time-barred. Motion to Dismiss at 9-10. Plaintiff argues "[t]he Court should reject this argument because *Heck* tolling applies to the limitations period for Plaintiff's claim." Opposition at 7 (italics in original). Plaintiff is incorrect.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a malicious prosecution claim under § 1983, or a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence, does not accrue "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 489. A later Supreme Court decision, *Wallace v. Kato*, 549 U.S. 384 (2007), clarified *Heck*'s deferred accrual rule. *Wallace* involved a false arrest claim where the petitioner

argued "*Heck* compels the conclusion that his suit could not accrue until the State dropped its charges against him[.]" *Id.* at 392 (italics in original). In rejecting this argument, the Supreme Court held

> [w]hat petitioner seeks . . . is the adoption of a principle going well beyond *Heck*: that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a speculative rule is obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict[.]

*Id.* at 393 (emphasis in original).

Accordingly, the *Heck* deferred accrual rule comes into play "only when there exists a conviction or sentence that has *not* been invalidated, that is to say, an outstanding criminal judgment. It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn." *Id.* (internal citations and ellipsis omitted; emphasis in the original).

Based on the foregoing, Plaintiff's false arrest claim, like that in *Wallace*, is not subject to *Heck* tolling. Moreover, while neither *Wallace* nor *Heck* address abuse of process claims, the Second Circuit has declined to extend the rule in *Heck* to other constitutional violations that "may be remedied without impugning the validity of a conviction." *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014). Because Plaintiff's abuse of process claim could have been remedied without disputing the validity of his conviction, it follows that *Heck* tolling should not apply to his abuse of process claims. *See, e.g., Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., Local 1889, AFT AFL-CIO*, 343 N.E.2d 278, 282-83 (N.Y. 1975) (stating elements for abuse of process claim, which do not include requirement of a conviction); *see also Lucas v. Novogratz*, 01-CV-5445, 2002 WL

31844913, at *6 (S.D.N.Y. Dec. 18, 2002) (Lynch, J.) ("[A]ccrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor[.]") (quotation marks and citation omitted).

Absent the availability of *Heck* tolling, Plaintiff's malicious abuse of process and false arrest claims are governed by the following statute of limitations and accrual rules. With respect to Plaintiff's federal malicious abuse of process claims, "[c]laims pursuant to 42 U.S.C. § 1983 are governed by New York's three (3)-year statute of limitations. Although state law governs the applicable limitations period, federal law governs when a federal claim accrues." *DeMartino v. New York*, 12-CV-3319, 2013 WL 3226789, at *13 (E.D.N.Y. June 24, 2013) (Feuerstein, J.) (internal citations omitted). Under federal law, a claim for abuse of process accrues "at such time as the criminal process is set in motion—typically at arrest—against the plaintiff. However, accrual cannot be appropriate before such time as plaintiff is aware, or ought to be aware, of those facts providing a basis for his claim." *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.) (internal citations omitted).

With respect to Plaintiff's state law claim for abuse of process, under New York State law, such claims are "governed by a one-year statute of limitations as an intentional tort." *Cuillo v. Shupnick*, 815 F. Supp. 133, 136 (S.D.N.Y. 1993) (Sweet, J.) (citation omitted); *see also* N.Y. C.P.L.R. 215(3). When claims are brought against a municipality, the limitations period is "one year plus 90 days" under N.Y. Gen. Mun. Law § 50-i. *See Lopez v. City of New York*, 14-CV-3743, 2015 WL 1954470, at *8 (E.D.N.Y. Apr. 29, 2015) (Cogan, J.) (citing N.Y. Gen. Mun. Law § 50-i); *see also Matthews v. City of New York*, 889 F. Supp. 2d 418, 447 (E.D.N.Y. 2012) (Matsumoto, J.). Under state law, a claim for abuse of process occurs, at the latest, when the criminal proceeding is terminated. *Beninati v. Nicotra*, 657 N.Y.S.2d 414, 415 (1997). At this

juncture, the Court need not determine which statute of limitations period is applicable because under either standard, as discussed directly below, Plaintiff's claim is time-barred.

Plaintiff's state law false arrest claim is also subject to "New York's one-year statute of limitations for intentional torts." *Lucas*, 2002 WL 31844913 at *6 (citing N.Y. C.P.L.R. 215(3)).[2] In addition, "[c]auses of action for false arrest and false imprisonment accrue when the confinement terminates." *Id.*

Here, Plaintiff was arrested on April 13, 2011. On that same day, he was arraigned and released. Dkt. 38-10 ("Arraignment Sheet"). As such, Plaintiff's federal law claim for malicious abuse of process, state law abuse of process claim, and state law false arrest claim all accrued on April 13, 2011. Plaintiff therefore had until April 13, 2014 to bring his federal law claim for malicious abuse of process, April 13, 2012 or July 13, 2012 to bring his state law claim for the same, and April 13, 2012 to bring his state law false arrest claim. Since Plaintiff filed his Complaint on January 5, 2015, these claims are time-barred. Accordingly, Defendants' motion to dismiss these claims is GRANTED, and Plaintiff's third, tenth, and eleventh causes of action are dismissed as time-barred.

### B. Defendants Hynes and Moehle are Entitled to Absolute Immunity

Defendants next argue that the Complaint should be dismissed with respect to Defendants Hynes and Moehle because they are entitled to absolute immunity. Motion to Dismiss at 12-13. Plaintiff argues they are not entitled to absolute immunity because of their respective roles in the investigation of criminal charges. Opposition at 14. Plaintiff is incorrect.

---

[2] To the extent Plaintiff's Complaint could be read to state a federal claim for false arrest, such a claim would also be time barred as more than three years have elapsed between when Plaintiff was released from arrest on April 13, 2011 and the filing of this Complaint on January 5, 2015. *See DeMartino*, 2013 WL 3226789 at *13.

"Absolute immunity bars a civil suit against a prosecutor for advocatory conduct that is intimately associated with the judicial phase of the criminal process." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (internal quotation marks and citations omitted).  To determine whether a prosecutor is entitled to absolute immunity, courts must apply a "functional approach." *Id.* (citation omitted).  Absolute immunity typically attaches "to conduct in court, as well as conduct preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* (internal quotation marks and citation omitted).  Prosecutorial immunity from liability arising out of § 1983 claims "is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Id.* (internal quotation marks, brackets and citations omitted).  Moreover, "[t]he Supreme Court has explained that a prosecutor's functions preliminary to the initiation of proceedings include whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Id.* (internal quotation marks and citation omitted).  Nonetheless, a prosecutor will not enjoy absolute immunity for "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings[.]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

In this case, Plaintiff argues that Defendants Hynes and Moehle are not entitled to absolute immunity because "it is well-settled that a prosecutor is *not* entitled to qualified immunity for his or her role in the investigation of criminal charges."  Opposition at 14 (emphasis in original; citation omitted).  However, not every investigatory function a prosecutor performs will strip him or her of absolute immunity.  As the Supreme Court has explained,

> [t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the

detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.

*Buckley*, 509 U.S. at 273-74 (internal quotation marks and citations omitted).

Here, the Complaint contains no allegations to suggest Defendant Hynes and Defendant Moehle performed an investigatory function not normally within the role of a prosecutor. For example, the Complaint alleges that the NYPD Internal Affairs investigators conducted formal interviews as part of the investigation at the direction of only Defendants Campisi, Cohen, and Galati – not Defendants Hynes and Moehle. *See* Complaint at ¶ 49. Additionally, the Complaint only makes conclusory allegations that an indictment was obtained against Plaintiff at the direct urging of Defendant Hynes "for the malicious purpose of retaliating against [Plaintiff.]" *See, e.g., id.* at ¶ 50. Such conclusory allegations, however, are insufficient to state a cause of action. *Iqbal*, 556 U.S. at 678. Furthermore, the Complaint focuses on conduct clearly protected by absolute immunity. For example, Plaintiff alleges that "[d]uring the course of trial and in furtherance of the Defendants' attempts to obtain a false conviction against [Plaintiff], Moehle offered and introduced evidence from one of her witnesses that she knew and should have known was falsified[.]" Complaint at ¶ 53; *see also id.* at ¶¶ 54-59. However, as explained above, conduct occurring during the judicial phase of the criminal process is protected by absolute immunity because it is conduct that is at the core of the prosecutor's role as an advocate. *See, e.g., Giraldo*, 694 F.3d at 165. Accordingly, Defendants Hynes and Moehle are entitled to absolute immunity, and Defendants' motion to dismiss on this ground is GRANTED.

## C. Defendant Carvajal is Entitled to Absolute Immunity

Defendants also argue the Complaint should be dismissed with respect to Defendant Carvajal because she is entitled to absolute immunity as a witness who testified during trial. Motion to Dismiss at 13. Plaintiff claims Defendant Carvajal is not entitled to absolute immunity because she is a complaining witness. Opposition at 19.

As previously discussed, "[a]bsolute immunity bars a civil suit against a prosecutor for advocatory conduct that is intimately associated with the judicial phase of the criminal process." *Giraldo*, 694 F.3d at 165 (internal quotation marks and citations omitted). This same immunity also extends to "a trial witness sued under § 1983 . . . [for] *any* claim based on [her] testimony." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1505 (2012) (emphasis in original; internal citation omitted). "There is a distinction, however, between witnesses whose role was limited to providing testimony . . . and complaining witnesses, who played a role in initiating a prosecution[.]" *Thomas v. Colletti*, No. 13-CV-04827, 2014 WL 1329947, at *3 (S.D.N.Y. Mar. 28, 2014) (Roman, J.) (internal quotation marks and citations omitted). The latter do not enjoy absolute immunity. *Id.*

Here, there are no allegations that Defendant Carvajal acted as a "complaining witness." Plaintiff fails to provide any allegations as to how Defendant Carvajal played a role in initiating the prosecution or in aiding an investigation against Plaintiff. In fact, the only allegations against Defendant Carvajal are those relating to her testimony during trial, which are protected by absolute immunity, and those relating to her calling Plaintiff to testify, which is protected by absolute immunity as a prosecutorial function. *See* Complaint at ¶¶ 46-47, 54-59. Accordingly, Defendant Carjaval is entitled to absolute immunity and Defendants' motion to dismiss on this ground is GRANTED.

### D. Plaintiff's Malicious Prosecution Claims Must be Dismissed

Plaintiff brings a malicious and fraudulent prosecution cause of action under 42 U.S.C. § 1983 as well as state law claim for malicious prosecution. *See* Complaint at ¶¶ 86-91, 122-124. Defendants argue that Plaintiff cannot maintain a cause of action for malicious prosecution because Plaintiff's indictment created probable cause for his prosecution. Motion to Dismiss at 14-17. Plaintiff, on the other hand, argues that he has overcome the presumption of probable cause. Opposition at 19-22. Plaintiff is incorrect.

To sustain a malicious prosecution claim under New York law, a plaintiff must show "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Newton v. City of New York*, 566 F. Supp. 2d 256, 272-73 (S.D.N.Y. 2008) (Scheindlin, J.) (internal quotation marks and citations omitted). "To establish a claim for malicious prosecution under [§] 1983, a plaintiff must also allege all of the elements of malicious prosecution under state law." *Id.* (citations omitted). The existence of a grand jury indictment creates a presumption of probable cause. *Id.* at 273. A plaintiff may rebut this presumption with evidence that "the indictment was procured by fraud, perjury, the suppression of evidence[,] or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citations omitted).

Here, Plaintiff was indicted by a grand jury, which gives rise to a presumption that the prosecution of Plaintiff was supported by probable cause. *See Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003) (citations omitted). Plaintiff claims he has overcome the presumption of probable cause because the Complaint alleges Defendants made false claims, failed to disclose exculpatory evidence, and prosecuted Plaintiff in bad faith. Opposition at 20. However, upon

closer review, the Complaint only alleges such facts with respect to Defendants Moehle and Carjaval, both of whom are entitled to absolute immunity.[3] *See* Complaint at ¶¶ 52-59.

With respect to the other Defendants, the Complaint does not allege facts to support a conclusion that the indictment returned against Plaintiff was procured by fraud, perjury, or in bad faith. Plaintiff only alleges the indictment was obtained against him "for the malicious purpose of retaliating against [him] and for the purpose of discrediting [him.]" Complaint at ¶ 50. However, "[a] plaintiff must present more than mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith to rebut the presumption." *Peterson v. Regina*, 935 F. Supp. 2d 628, 642 (S.D.N.Y. 2013) (Rakoff, J.) (internal quotation marks and citations omitted). Accordingly, Defendants' motion to dismiss on this ground is GRANTED, and Plaintiff's second and ninth causes of action are dismissed.

### E. Plaintiff's First Amendment Claim Partially Survives

Plaintiff also claims Defendants violated his First Amendment rights of free speech and association pursuant to 42 U.S.C. § 1983 by engaging in conduct to silence Plaintiff from voicing his concerns about the propriety of the NYPD interrogating Muslim arrestees. *See* Complaint at ¶¶ 76-85. Defendants argue this claim should be dismissed on two grounds. First, Defendants argue that most of the allegations with respect to this claim are time-barred. Motion to Dismiss at 11-12. Second, Defendants argue that, with respect to the remaining allegations, Plaintiff has failed to plead sufficient facts to establish a First Amendment retaliation claim. *Id.* at 24-33. In this case, Plaintiff's allegations arise under two circumstances: his internal complaints and his statements made to the press. The Court will first address the timeliness issue before addressing the remaining issues in turn.

---

[3] Plaintiff further concedes Defendant Carvajal is entitled to absolute immunity on the malicious prosecution claim to the extent it is based on her trial testimony. Opposition at 19.

### 1. Many of Plaintiff's First Amendment Claims are Time-Barred

Plaintiff brings his First Amendment claim pursuant to 42 U.S.C. § 1983. "The statute of limitations for § 1983 actions brought in New York is three years." *Crosland v. Safir*, 54 F. App'x 504, 505 (2d Cir. 2002) (citation omitted). As such, Defendants argue that any allegations made before January 5, 2012 – three years prior to the filing of the Complaint – are time barred. Motion to Dismiss at 11-12. Plaintiff, on the other hand, argues that all his First Amendment claims survive for two reasons. First, they survive because the actions are part of a continuing violation. Opposition at 11-12. Second, they survive because "the reassertion of these same charges against [Plaintiff] in connection with his reinstatement request has operated to revive those claims." *Id.* at 13. Plaintiff is incorrect on both grounds.

First, Plaintiff's reliance on the continuing violation doctrine to avoid dismissal is misplaced. For the continuing violation doctrine to apply, each of the allegedly retaliatory events must constitute an "ongoing policy of retaliation." *Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 732 (2d Cir. 2013) (internal quotation marks and citations omitted). Accordingly, the continuing violation doctrine does not apply to discrete acts of discrimination, such as "termination, failure to promote, denial of transfer, or refusal to hire[.]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Courts within this Circuit "have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." *Crosland v. City of New York*, 140 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) (Scheindlin, J.) (internal quotation marks and citations omitted). Moreover, "[t]he doctrine has generally been limited to situations where there are specific policies or mechanisms, such as discriminatory seniority lists or employment tests." *Id.* (citations omitted). Here, Plaintiff does not allege an ongoing policy of retaliation. There are no facts alleged in the Complaint to suggest Defendants had specific policies or mechanisms in place that could

constitute an ongoing policy of retaliation. Instead, each of the allegedly retaliatory events was a discrete action such as failure to reinstate, termination, and suspension. As such, Plaintiff cannot avail himself of the continuing violations doctrine. *Smith*, 524 F. App'x at 732.

Second, Plaintiff has provided no authority for the proposition that "the reassertion of these same charges against [Plaintiff] in connection with his reinstatement request has operated to revive those claims" nor has this Court found such a proposition within this District or the Second Circuit. Opposition at 13. Absent any authority to support Plaintiff's argument, the Court must reject it.

Accordingly, any First Amendment retaliation claims alleged before January 5, 2012 are time-barred. *See, e.g.*, Complaint at ¶¶ 42-43. Defendants' motion to dismiss on this ground is GRANTED.

### 2. Plaintiff's Internal Complaints

Plaintiff first alleges a series of retaliatory actions based on internal complaints he made to the Intelligence Division about his concerns related to the NYPD interrogating Muslim arrestees. *See, e.g.*, Complaint at ¶ 40. Defendants argue Plaintiff's First Amendment retaliation claims based on these allegations should be dismissed because Plaintiff was acting in his official duties and not as a citizen on a matter of public concern. Motion to Dismiss at 25-31. At this stage of the proceedings, dismissal is inappropriate.

The elements of a First Amendment retaliation claim depend on the factual context. *Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 290 (E.D.N.Y. 2009) (Bianco, J.) (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008)). When a public employee brings retaliation claims based on the First Amendment, as is the case here, the plaintiff must prove that: "(1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[] on a matter of public concern; (2) [he] suffered an adverse employment

action; and (3) the speech was a motivating factor in the adverse employment decision." *Id.*
(internal quotation marks and citations omitted).

Here, Defendants only seek dismissal on one ground related to the first element: that
Plaintiff did not engage in constitutionally protected speech because he complained about the
interrogations not as a citizen, but rather pursuant to his official duties. Motion to Dismiss at 25-
31. As the Supreme Court has held, "when public employees make statements pursuant to their
official duties, the employees are not speaking as citizens for First Amendment purposes, and the
Constitution does not insulate their communications from employer discipline." *Garcetti v.
Ceballos*, 547 U.S. 410, 421 (2006). As such, a public employee speaking in his or her official
capacity is not speaking as a citizen for First Amendment purposes.

At this stage of the proceedings, the Court cannot conclude that Plaintiff's speech about
the interrogations was made pursuant to official duty. Plaintiff alleges he "openly expressed his
concerns about the propriety of the NYPD interrogating Muslim arrestees and in particular the
recording of information about them even though the interrogations yielded no pertinent
information that ought to be created or maintained in an intelligence database." Complaint at ¶
39. It is not clear from the face of the Complaint that Plaintiff had any job responsibility or duty
to speak on this subject. Based solely on the allegations in the Complaint, and drawing all
reasonable inferences in the light most favorable to the Plaintiff, the Court cannot rule as a
matter of law that Plaintiff's speech about the interrogations was made pursuant to his official
duties. *See, e.g.*, *Kelly*, 675 F. Supp. 2d at 292-93 (noting factors to consider in evaluating
whether speech was made pursuant to a public employee's official duties and concluding it could
not determine the issue in that case at the motion to dismiss stage); *see also Sassone v.
Quartararo*, 598 F. Supp. 2d 459, 465 (S.D.N.Y. 2009) (Karas, J.) (Plaintiffs adequately alleged

they were speaking as public citizens where it was not clear from the face of the amended complaint that statements were made in their official capacity as employees). Accordingly, Defendants' motion to dismiss on this ground is DENIED. However, the Court notes that many of Plaintiff's allegations related to his internal complaints are time-barred. *See* Complaint at ¶¶ 39-41. Nonetheless, to the extent the Complaint alleges any First Amendment retaliation claims occurring on or after January 5, 2012, such claims will survive the instant motion to dismiss.

### 3. Statements Made to the Press

Plaintiff next alleges a series of retaliatory actions based on statements made to the press about his concerns related to the NYPD interrogating Muslim arrestees. *See, e.g.*, Complaint at ¶¶ 64-66. Defendants argue dismissal based on these allegations is appropriate because Plaintiff cannot demonstrate a chilling effect on the exercise of his First Amendment rights. Motion to Dismiss at 31-33. Because Plaintiff's statements to the press were made subsequent to his termination from the NYPD, the Court will apply the standard applicable to ordinary citizens as Plaintiff was then no longer a public official.

Under the ordinary citizen standard, to prevail on a First Amendment retaliation claim, a plaintiff must allege "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998)).

In this case, Defendants only dispute the third element. To meet this element, a plaintiff must establish his First Amendment rights were actually chilled. *See Bartels v. Inc. Vill. of Lloyd*, 751 F. Supp. 2d 387, 401 (E.D.N.Y. 2010) (Tomlinson, Mag. J.) (citations omitted). However, the Second Circuit has clarified that "where retaliation is alleged to have caused an injury separate from any chilling effect, (e.g., a job loss or demotion), the chilling element is not

necessary to state a claim." *Id.* at 397 (internal quotation marks omitted) (citing *Morrison v. Johnson*, 429 F.3d 48, 51 (2d Cir. 2005)); see also *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (Wexler, J.).

Here, because Plaintiff has alleged a retaliation claim – failure to reinstatement Plaintiff after reversal of his perjury conviction – separate from any chilling effect, the "chilling" element is not a necessary component of Plaintiff's claim. *See Bartels*, 751 F. Supp. 2d at 397.

Defendants nonetheless claim that dismissal is appropriate because Plaintiff's retaliation claims for statements made to the press are premature for review as they depend on the outcome of Plaintiff's reinstatement request, an administrative decision that is not yet final. However, the Second Circuit has stated that "in the First Amendment context, the ripeness doctrine is somewhat relaxed." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002) (citations omitted). The rationale behind this principle is that "First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss." *Id.* at 90-91 (internal quotation marks and citations omitted). In view of the circumstances here, the Court declines to dismiss the First Amendment retaliation claims at this time. Accordingly, Defendants' motion to dismiss on this ground is DENIED. Any First Amendment retaliation claims alleged on or after January 5, 2012 with respect to statements made to the press survive the motion to dismiss.

### F. Plaintiff Right to a Fair Trial and Due Process Claims Must be Dismissed

Plaintiff claims he was denied the right to a fair trial under 42 U.S.C. § 1983 because Defendants "present[ed] false and fabricated evidence during [his] perjury trial." Complaint at ¶¶ 103-105. Plaintiff also seeks relief for violation of his substantive and procedural due process rights under 42 U.S.C. § 1983. *See* Complaint at ¶¶ 106-110. These claims must be dismissed insofar as the Complaint only makes these allegations with respect to Defendants Hynes, Moehle

—20—

and Carvajal – all of whom are entitled to absolute immunity. *See* Complaint at ¶¶ 53-59; *see supra* Sections II.B and II.C. To the extent the Complaint attempts to make such allegations with respect to the other Defendants, Plaintiff's allegations are insufficient to survive a motion to dismiss as they only include conclusory statements. *See Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss on these grounds is GRANTED, and Plaintiff's sixth and seventh causes of action are dismissed.

### G. Plaintiff's Conspiracy Causes of Action Must be Dismissed

Plaintiff also brings two separate conspiracy to violate his civil rights claims – one under 42 U.S.C. § 1983 and one under 42 U.S.C. 1985(3). Complaint at ¶¶ 95-102. Defendants argue these claims should be dismissed because Plaintiff has failed to plead sufficient factual allegations to establish a "meeting of the minds, such that [D]efendants entered into an agreement, express or tacit, to achieve [an] unlawful end." Motion to Dismiss at 37 (citations omitted; brackets in original). Because the two causes of action have similar elements, the Court will discuss them together.

"[To] state a § 1983 conspiracy claim, [a] plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. A § 1983 conspiracy claim must be based on an underlying violation of one or more constitutional rights." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 533 (S.D.N.Y. 2013) (Koeltl, J.) (internal quotation marks and citations omitted).

Similarly, to state a conspiracy claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is deprived of any right of a citizen of the United States." *Id.* (internal quotation marks,

citations, and ellipsis omitted). Additionally, a § 1985(3) conspiracy claim requires a showing that the "conspiracy [was] motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' actions." *Id.* (internal quotation marks and citations omitted).

To survive a motion to dismiss with respect to both § 1983 and § 1985(3) conspiracy claim, a plaintiff must do more than just state vague and conclusory allegations that Defendants entered into an unlawful agreement. *See Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013) (Suddaby, J.) (citations omitted). "Instead, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Id.* (internal quotation marks and citations omitted).

Here, even reading the Complaint most liberally, Plaintiff does not set forth any facts to suggest Defendants had a meeting of the minds to enter into an agreement, either express or tacit, to achieve an unlawful end. The Complaint identifies no specific communications between Defendants nor does it allege any specific activities or coordinated efforts between the Defendants. Additionally, with respect to Plaintiff's § 1985(3) conspiracy claim, there are no allegations of a collective desire to deprive Plaintiff of any constitutional right. At most, the Complaint alleges certain actions were taken by Defendants "at the direct urging, encouragement, and importuning[,]" or "at the direction and orders of [other Defendants.]" Complaint at ¶¶ 50-51. However, this does not amount to an "agreement" between the Defendants as there is no factual basis to support a meeting of the minds. See *Trombley*, 929 F. Supp. 2d at 97. Although Plaintiff alleges that certain actions were taken "[i]n furtherance of Cohen's and Galati's plan to punish and discredit [Plaintiff,]" Plaintiff still fails to provide a factual basis to establish a meeting of the minds. *Id.* at ¶ 42. As discussed above, it is well

settled that claims for conspiracy containing vague and conclusory allegations are insufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See e.g.*, *Biswas*, 973 F. Supp. 2d at 533. *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209-10 (S.D.N.Y. 2013) (Ramos, J.); *Johnson v. City of New York*, 669 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) (Stein, J.). Accordingly, Defendants' motion to dismiss these claims is GRANTED, and Plaintiff's fourth and fifth causes of action are dismissed.

### H. Plaintiff's Claim for Municipal Liability Must be Dismissed

Plaintiff lastly seeks relief based on municipal liability under 42 U.S.C. § 1983. *See* Complaint at ¶¶ 111-121. Defendants argue dismissal is warranted because there is a "disconnect between the purported municipal policy identified in the [C]omplaint and [P]laintiff's purported injuries[.]" Dkt. 41 ("Reply") at 19. Based on the allegations in the Complaint, Defendants are correct.

A plaintiff who seeks to impose municipal liability under § 1983 "must prove that [an] action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal citation omitted). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). A plaintiff may establish a causal link "by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of

its employees." *Abreu v. City of New York*, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (Vitaliano, J.) (citation omitted).

Here, Plaintiff only identifies one municipal policy to establish his municipal liability claim: "the profiling of people on the basis of religion and subjecting them to interrogations that collected information about their religious preference and practices." Complaint at ¶ 113. However, to support his claim for municipal liability, Plaintiff only makes conclusory statements by alleging that the this policy the moving force behind Defendants' constitutional violations, but the NYPD's deliberate indifference to proper training and supervision of Defendants Cohen, Galati, Miller, and Campisi constituted explicit and/or tacit approval of Defendants' unconstitutional conduct. *Id.* at ¶¶ 115-116. Beyond this, Plaintiff's Complaint alleges nothing more. No factual matter of any kind establishes that the policy identified was the cause of Plaintiff's injuries. At most, the Complaint alleges certain individuals caused Plaintiff's injuries. However, "a municipality may not be liable under § 1983 by application of the doctrine of *respondeat superior.*" *Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (Karas, J.) (internal quotation marks and citations omitted). Moreover, there are absolutely no facts to establish a deliberate choice by municipal policymakers to look the other way to unconstitutional conduct which caused Plaintiff's injuries. Absent sufficient allegations, Plaintiff's claim for municipal liability must be dismissed. *See Iqbal*, 556 U.S. at 678. Accordingly, Defendants' motion to dismiss this claim is GRANTED, and Plaintiff's eighth cause of action is dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, Dkt. 37, is hereby GRANTED IN PART and DENIED IN PART.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November _30_, 2015
Brooklyn, New York